IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

TIMOTHY AND CYNTHIA HOLT,

     Plaintiffs,

  v.                            No. 1:08-cv-01285

MACY'S RETAIL HOLDINGS, INC.,
and DEPARTMENT STORES
NATIONAL BANK,

     Defendants.

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

---

     Plaintiffs, Cynthia and Timothy Holt, filed suit against Defendants, Macy's Retail Holdings ("Macy's") and Department Stores National Bank ("DSNB"), in the Circuit Court of Madison County, Tennessee, which the Defendants removed to this Court on November 19, 2008. (Docket Entry ("D.E.") No. 1.) Pending before the Court is Defendants' amended motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Counts IV, V, VIII, and X of Plaintiffs' Complaint (D.E. No. 22), to which the Holts have responded. (D.E. No. 27.) For the reasons set forth hereinafter, the Court **GRANTS** Defendants' motion as to Counts IV, V, and VIII, but **DENIES** their motion with respect to Count X.

## FACTUAL BACKGROUND

     Cynthia Holt ("Cynthia") purchased several pieces of expensive jewelry from Macy's in Jackson, Tennessee on October 12, 2007, and again on November 4, 2007. (D.E. No. 1,

Complaint, ¶¶ 9, 17-18.)[1]  The exact net amount that she spent on the items is not clear because the Complaint contains allegations that make it appear as though Cynthia was able to exchange some of the October 12 merchandise for part of the November 4 jewelry purchases, and that she received and perhaps used Macy's gift cards to defray some of the purchase amounts. (Id. at ¶¶ 16-19, 24-26, 32.) However, the combined gross amount that Cynthia spent on jewelry on these two occasions was $112,006.06. (Id. at ¶¶ 9, 18.)

The Plaintiffs made these purchases using a Macy's credit card ("the Card")—issued by DSNB—that Plaintiffs claim originally was issued to Cynthia individually, but subsequently was converted into a joint account held by both Cynthia and her husband, Timothy Holt ("Timothy"), without their knowledge. (Id. at ¶¶ 9-11.) Plaintiffs contend that Cynthia never was required to furnish her signature when she made the aforementioned purchases, but that her "name was signed and/or initialed by another and/or others besides Cynthia herself."[2] (Id. at ¶¶ 9, 18, 20.) Nevertheless, Plaintiffs do not deny that Cynthia made the purchases for which her signature was "forged." Instead, they claim that Cynthia suffers dissociative episodes brought about by post-traumatic stress disorder ("PTSD"), and that her behavior in making these purchases comports with the pattern of such episodes associated with PTSD. (Id. at ¶¶ 6-8.)[3]

The gravamen of the dispute between the parties is Macy's refusal to allow Cynthia to return the jewelry, which Plaintiffs assert violated the terms and conditions under which the Card

---

[1]  Plaintiffs filed a motion to amend their complaint (D.E. No. 14), which the Court granted on January 29, 2009. (D.E. No. 15.) However, from the docket, no amended complaint was ever filed, and the deadline for submitting amended pleadings, pursuant to the Scheduling Order, has passed. (D.E. No. 16, Scheduling Order.)

[2]  The redundancy of this statement is emblematic of the host of grammatical, spelling, syntactical, and logical errors in Plaintiffs' Complaint and other briefs—including a 103-word sentence on page 7 of Plaintiffs' Response to the Motion to Dismiss—which render them confusing in places.

[3]  However, despite this lukewarm contention, Plaintiffs stop short of averring that such a dissociative episode actually *did* cause Cynthia to make the purchases, merely implying the possibility instead.

2

was issued.[4] Because the Holts have been unable to return the merchandise and have stopped

making payments to Defendants on the debt, their credit rating[5] has been negatively affected. (Id.

at ¶¶ 33-38.) For purposes of the current motion to dismiss, only four of the Plaintiffs' fourteen

claims are relevant: Count IV, which alleges violations of the Fair Credit Reporting Act (Id. at ¶¶

62-65); Count V, involving violations of the Fair Debt Collection Practices Act (Id. at ¶¶ 66-69);

Count VIII, which claims conversion (Id. at ¶¶ 77-79); and Count X, contending Defendants

engaged in forgery and/or theft of property (Id. at ¶¶ 83-86.)


STANDARD OF REVIEW

Motions to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure instructs that a pleading should be "a

short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.

P. 12(b)(6) permits dismissal of a plaintiff's lawsuit when it fails to state a claim upon which

relief can be granted.  In order for an asserted cause of action to survive a motion to dismiss

under Rule 12(b)(6), it need not necessarily be pleaded with "detailed factual allegations, [but

must] provide the 'grounds' of [plaintiff's] 'entitle[ment] to relief' [with] more than labels [or]

conclusions and a formulaic recitation of the elements of a cause of action.. . ." Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citations omitted).

Factual allegations of a complaint "must be enough to raise a right to relief above the speculative

level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in

---

[4]    Although not relevant to the current motion, Plaintiffs also allege that there were various problems with the
jewelry, such as the fact that one piece was tarnished, and another could not be sized so as to fit Cynthia's finger.
(Id. at ¶¶ 14-15.)
[5]    The Complaint contains specific allegations that Timothy Holt's individual credit rating has been affected,
but does not contain similar claims as to Cynthia Holt's individual credit rating. (D.E. No. 1, Complaint, ¶¶ 33-38.)
Plaintiffs also maintain that their joint credit rating has suffered. (Id.)

fact) . . . ." Id. at 555-56 (citations omitted). The key inquiry is whether the facts in the complaint set out "a claim to relief that is plausible on its face." Id. at 570; *see also* Hagen v. U-Haul Co. of Tenn., 613 F. Supp. 2d 986 (W.D. Tenn. 2009) (discussing the "plausibility standard").

When considering a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' " Erickson v. Pardus, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); Twombly, 550 U.S. at 556 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation omitted). Naturally, the type and specificity of the facts that must be pleaded to generate a plausible claim will vary depending on the elements of the cause of action asserted and the circumstances surrounding the litigation. *See* United States *ex rel.* Snapp, Inc. v. Ford Motor Co., 532 F.3d 496, 502 n.6 (6th Cir. 2008) (noting that the requirement to plead particular facts may be especially important in "cases likely to produce 'sprawling, costly, and hugely time-consuming' litigation"); *compare* Twombly, 550 U.S. at 564-69 (conducting a Rule 12(b)(6) analysis in a case involving a wide-ranging antitrust conspiracy among local telephone and internet service providers brought under § 1 of the Sherman Act), *with* Erickson, 551 U.S. at 93-94 (analyzing a prisoner's pro se § 1983 civil rights claim). As the Supreme Court has noted, "facial plausibility" is a "context-specific task" that requires the district court to "draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

ANALYSIS

4

A.      Count IV: Fair Credit Reporting Act ("FCRA")

"The purpose of the "FCRA is to promote 'efficiency in the Nation's banking system and to protect consumer privacy.' " Wolfe v. MBNA America Bank, 485 F. Supp. 2d 874, 882 (W.D. Tenn. 2007) (citing 15 U.S.C. § 1681(a)). Congress enacted it "to protect consumers from inaccurate information in consumer reports by establishing credit reporting procedures which 'utilize correct, relevant, and up-to-date information in a confidential and responsible manner.' " Nelski v. Trans Union, LLC, 86 F. App'x 840, 843-44 (6th Cir. 2004) (quoting Jones v. Federated Fin. Reserve Corp., 144 F.3d 961, 965 (6th Cir. 1998)). "The FCRA places obligations on three distinct types of entities involved in consumer credit: **consumer reporting agencies**, **users** of consumer reports, and **furnishers** of information to consumer reporting agencies." Carney v. Experian Info. Solutions, Inc., 57 F. Supp. 2d 496, 500 (W.D. Tenn. 1999) (emphasis added). "Consumer reporting agencies and users of consumer reports are subject to civil liability for willful or negligent violations of the FCRA." Id. (citing 15 U.S.C. §§ 1681n, 1681o). Thus, in order to state a cognizable claim against an entity for a violation of the FCRA, a plaintiff must establish that the defendant was either a "user" of consumer reports or a "consumer reporting agency."[6] Carney, 57 F. Supp. 2d at 500.

The Holts do not allege that Defendants are "consumer reporting agencies," and plainly, they are not. See, e.g., Carney, 57 F. Supp. 2d at 500 (citing 15 U.S.C. § 1681a(f)) (defining a "consumer reporting agency" as one that regularly engages in the practice of "assembling or

---

[6]      The FCRA is unambiguous that a "furnisher's" violations of 15 U.S.C. § 1681s-2(a) can only be enforced "by the Federal agencies and officials and the State officials identified in that section." Id. at § 1681s-2(d). *See also* Ruggiero v. Kavlich, 411 F. Supp. 2d 734, 736 (N.D. Ohio 2005) (noting that there is no private right of action against "furnishers," and that enforcement against "furnishers" is left up to "specific federal agencies and officials"). A private right of action is available against "furnishers" under § 1681s-2(b), however. Stafford v. Cross County Bank, 262 F. Supp. 2d 776, 783 (W.D. Ky. 2003) ("the Court concludes § 1681s-2(b) does allow a consumer to bring a private cause of action against a furnisher of credit information for either negligent or willful violations of the FCRA") (internal citations omitted). Nonetheless, as demonstrated more clearly *infra*, the Plaintiffs are unable to make out a prima facie case under § 1681s-2(b).

evaluating consumer credit" for the purpose of furnishing it to third parties); *see also* <u>DiGianni v.</u>
<u>Stern's</u>, 26 F.3d 346, 348 (2d Cir. 1994) (stating that [r]etailers . . . that merely furnish
information to consumer reporting agencies based on their experience with consumers are not
consumer reporting agencies within the meaning of the FCRA"). Thus, the viability of Plaintiffs'
FCRA cause of action against the Defendants turns upon whether they are "users" or
"furnishers" of information within the bounds of the FCRA.

      The Holts contend that Defendants violated the FCRA

> by *wrongfully reporting a delinquent debt* in Timothy's name containing
> information that Defendants know is inaccurate or erroneous since Plaintiffs'
> [sic] do not owe the debt for the items that Defendant Macy's was obligated
> to accept as timely returns as well as refund under the terms and conditions
> of the parties' Macy's credit card agreement.

(D.E. No. 1, Complaint, ¶ 64) (emphasis added). Thus, Plaintiffs' sole contention with regard to
the FCRA is that the Defendants reported inaccurate information to the credit reporting agencies,
which had a negative effect on their credit. Nowhere in Count IV do the Holts allege that
Defendants ever possessed or in any way "used" their credit information; instead, as the
language of Count IV makes clear, they claim that Defendants reported—or
*furnished*—information to credit reporting agencies, causing them harm. Plaintiffs contend that a
"user of consumer reports under the FCRA is anyone who pulls a consumer report either one or
more times for any reason," claiming to draw support for this proposition from <u>Russell v. Shelter</u>
<u>Fin. Servs.</u>, 604 F. Supp. 201 (W.D. Mo. 1984), and <u>Korotki v. Attorney Servs. Corp.</u>, 931 F.
Supp. 1269 (D. Md. 1996). Despite the fact that Plaintiffs do not even allege that Defendants
ever actually "pulled" the Holts' consumer reports, the cited cases do not, in any way, support
the Plaintiffs' broad interpretation of a "user." In <u>Korotki</u>, the parties *agreed* that the defendants
were "users," and in <u>Russell</u>, the court never entertained any discussion that the defendant was

6

anything other than a "user." <u>Korotki</u>, 931 F. Supp. at 1276 n.22; <u>Russell</u>, 604 F. Supp. at 202.

Thus, since the Holts can point to no case law bolstering their definition of a "user," and because

the facts of this case do not support such a conclusion, the Court finds that Defendants were not

"users" of consumer credit information. Just as in <u>Carney</u>, there is no indication that the

Defendants "did anything more than report information concerning [their] dealings with plaintiff

as an account holder." <u>Carney</u>, 57 F. Supp. 2d at 501. Defendants merely "issued credit in [the

Holts'] name and informed other[s] . . . that [their] account was delinquent," which, on the facts

alleged, makes Defendants "furnishers" for purposes of the FCRA. <u>Id</u>.

 With respect to the legal duties imposed on "furnishers," the court in <u>Carney</u> said:

> Section 1681s-2 of Title 15 of the FCRA is entitled: "Responsibilities of
> furnishers of information to consumer reporting agencies." That section
> identifies two duties imposed upon such furnishers of information: the duty
> to provide accurate information [§ 1681s-2(a)] and the duty to undertake an
> investigation upon receipt of notice of dispute from a consumer reporting
> agency [§ 1681s-2(b)]. Although the term "furnisher of information" is not
> defined within the FCRA, common sense dictates that the term would
> encompass an entity such as [the defendant] which transmits information
> concerning a particular debt owed by a particular consumer to consumer
> reporting agencies such as Experian, Equifax, MCCA, and Trans Union.

<u>Id</u>. As noted *supra*, in footnote 6, there is no private right of action for violations of § 1681s-2(a).

<u>Carney</u>, 57 F. Supp. 2d at 502; *see also* 15 U.S.C. § 1681s-2(d). Nonetheless, the Holts contend

that they have asserted a claim under § 1681s-2(b), which does allow for a private right of action

if there has been a willful violation. <u>Stafford v. Cross Country Bank</u>, 262 F. Supp. 2d 776, 783

(W.D. Ky. 2003). Even assuming *arguendo* that the Complaint properly set forth a claim that

Defendants failed to investigate a disputed credit report per § 1681s-2(b), they nevertheless

"must show that the furnisher received notice *from a consumer reporting agency, not the

plaintiff[s]*, that the credit information is disputed." <u>Downs v. Clayton Homes, Inc.</u>, 88 F. App'x

851, 853-54 (6th Cir. 2004) (citing <u>Young v. Equifax Credit Info. Servs. Inc.</u>, 294 F.3d 631, 639-

40 (5th Cir. 2002)) (emphasis added). The Complaint is devoid of any allegations that anyone

other than the Holts contacted the Defendants regarding any credit "dispute." Thus, the Plaintiffs

are unable to set forth a claim against the Defendants upon which relief may be granted under

either applicable provision of the FCRA.


       B.      <u>Count V: Fair Debt Collection Practices Act ("FDCPA")</u>

      Congress passed the FDCPA "to eliminate abusive debt collection practices by debt

collectors." 15 U.S.C. § 1692(e). In order to assert a claim under the FDCPA, a plaintiff must

show that the individual or entity is a "debt collector" pursuant to the definition in § 1692a(6). In

this case, the parties have agreed upon the FDCPA's definition of a "debt collector" in their

respective briefs:

> The FDCPA defines a "debt collector" as "any person who uses any
> instrumentality of interstate commerce or the mails in any business the
> principal purpose of which is the collection of any debts, or who regularly
> collects or attempts to collect, directly or indirectly, debts owed or due or
> asserted to be owed or due another." 15 U.S.C. § 1692a(6). Under §
> 1692a(6)(B), however, the term "debt collector" does not include "any
> person while acting as a debt collector for another person, both of whom are
> related by common ownership or affiliated by corporate control, if the person
> acting as a debt collector does so only for persons to whom it is so related or
> affiliated and if the principal business of such person is not the collection of
> debts."

(D.E. No. 27, Response to Motion to Dismiss, p. 8; *see also* D.E. No. 22, Amended Motion to

Dismiss, p. 7.)

      Defendants allege that neither of them falls within the FDCPA's definition of a "debt

collector," and as a result, Plaintiffs cannot state a claim against them under that statute. (D.E.

No. 22, Amended Motion to Dismiss, pp. 7-9.) To support this contention, Defendants point to

several decisions that distinguish between creditors and "debt collectors," averring that the two

are mutually exclusive for purposes of the FDCPA. *See* MacDermid v. Discover Fin. Servs., 488

F.3d 721, 735 (6th Cir. 2007) (finding it "well-settled" that creditors are not "debt collectors" for

purposes of the FDCPA, are "not subject to the FDCPA when collecting their accounts," and

therefore, Discover Card is not a "debt collector" for purposes of the FDCPA) (internal citation

omitted), *and* Lewis v. ACB Business Servs. Inc., 135 F.3d 389, 411 (6th Cir. 1998) (holding

that American Express is not a "debt collector," and that creditors will not be deemed "debt

collectors" unless the creditors or their employees collect the debts of third parties or attempt to

collect their own debts under assumed names) (internal citations omitted); *see also* Johnson v.

Americredit Fin. Servs., Inc., 2009 WL 2929396, at *4-*5 (M.D. Tenn. September 8, 2009)

(discussing the difference between a "debt collector" and a creditor); Bridge v. Ocwen Fed.

Bank, 2009 WL 2781103, at *4 (N.D. Ohio August 28, 2009) ("the [FDCPA] is directed solely

to the conduct of debt collectors, not creditors"); *and* Poydras v. One West Bank, 2009 WL

2382558, at *2 (E.D. Mich. July 31, 2009) (agreeing with the defendant that "the [FDCPA's]

definition of 'debt collector' specifically excepts creditors").

      The Holts do not dispute any of the Defendants' assertions. Indeed, their response

acknowledges the wealth of statutory and decisional support for Defendants' position:

"Defendants have cited a lot of federal statutory and case law in their Motion to Dismiss against

portions of the Complaint for Damages that supports their position of creditors not being

regulated by the FDCPA." (D.E. No. 27, Response to Motion to Dismiss, p. 9.) Nevertheless, the

Holts contend that the Defendants are "debt collectors" because they literally collect debts from

delinquent customers, and because creditors and credit card issuers have to collect on such debts

"on a daily basis." (Id.) Unlike the Defendants, however, the Plaintiffs cite no authority for

either of these statements, presumably because none exists. Plaintiffs' contention that the Defendants are "debt collectors" boils down to nothing more than conclusory allegations. *See* Wilson v. Hofbauer, 113 F. App'x 651, 653 (6th Cir. 2004) ("wholly conclusory allegations are insufficient to state a cognizable claim for relief") (citing Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986)). Thus, because the Holts cannot contradict Defendants' assertions that they are not "debt collectors" for purposes of the FDCPA, the Plaintiffs' claim under this statute fails as a matter of law.

       C.       <u>Count VIII: Conversion</u>

With respect to conversion, the Complaint alleges little more than the "Defendants intentionally and deliberately took and converted tens of thousands of dollars worth of funds belonging to Plaintiffs for their own use and benefit by the exercise of dominion and control over said funds in defiance of Plaintiffs' right to them and without any legal or equitable justification [. . .]." Lacking is any specificity as to how or by what means this alleged conversion occurred. (D.E. No. 1, Complaint, ¶ 78.) Although not directly set forth in the Complaint, the Plaintiffs' claim for conversion presumably is that because Defendants accepted checks that the Holts wrote to pay the balance on the Card, Defendants have committed the tort of conversion, since they were not entitled to these funds in the first place. That is, because Defendants "wrongfully" refused to accept the Plaintiffs' return of the purchased jewelry, the antecedent debt was illegitimate, and any payments thereon were unjustly retained by the Defendants.

Under Tennessee law, conversion is a party's " 'appropriation of [property] to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right.' " Hanna v. Sheflin, 275 S.W.3d 423, 427 (Tenn. Ct. App. 2008) (quoting Barger v. Webb, 391

S.W.2d 664, 665 (Tenn. 1965)). The parties in this case, citing the same case law, allege that in order to maintain a cause of action for conversion, an interest in "specific, identifiable personalty must be pleaded and proved." (D.E. No. 27, Response to Motion to Dismiss, p. 9; D.E. No. 22, Amended Motion to Dismiss, p. 9.) However, the case that the parties rely upon to support this proposition is a Sixth Circuit opinion applying Michigan law, Lettinga v. Agristor Credit Corp., 686 F.2d 442, 448 (6th Cir. 1982). Because conversion is a tort claim, it resides exclusively in the domain of state law. *See, e.g.*, Allis-Chalmers Corp., 471 U.S. 202, 213-14, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985) (noting that a "state tort is a matter of state law"). As a result, Michigan law on conversion does not control the Court's analysis of the Plaintiffs' conversion claim brought under Tennessee law.

In fact, Tennessee law on conversion is less restrictive than the parties' briefs indicate. A prima facie case for common-law conversion in Tennessee requires the claimant to prove "(1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." Marks, Shell, & Maness v. Mann, 2004 WL 1434318, at *3 (Tenn. Ct. App. 2004) (citing Kinnard v. Shoney's, Inc., 100 F. Supp. 2d 781, 797 (M.D. Tenn. 2000) and Mammoth Cave Prod. Credit Ass'n v. Oldham, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977)). The party claiming conversion has the burden of proving each element. Nunley v. Nunley, 925 S.W.2d 538, 541-42 (Tenn. Ct. App. 1996).

Nevertheless, despite this more lenient standard, the Defendants also contend that the Tennessee version of the Uniform Commercial Code ("U.C.C.") prevents the Plaintiffs from claiming conversion, owing to the fact that "[a]n action for conversion of an instrument may not be brought by . . . the issuer or acceptor of the instrument." Tenn. Code Ann. § 47-3-420(a); (D.E. No. 22, Amended Motion to Dismiss, pp. 10-11). Defendants note that the terms and

11

conditions of the Plaintiffs' cardholder agreement with the Defendants[7] specifically indicate that payments made on the Card account are to be made by "check, money order, or similar instrument payable in U.S. dollars drawn on a financial institution located in the United States." (D.E. No. 22, Amended Motion to Dismiss, pp. 10-11; D.E. No. 1, Exhibit J to Complaint, Section 8D.) Therefore, any amounts that Plaintiffs paid on the balance of the Card necessarily would have to have been transmitted via check, money order, or similar instrument—a point that Plaintiffs do not dispute.

It naturally follows, then, that if the Holts fit within the Tennessee Code's definition of "issuer[s]" and if their form of payment qualifies as an "instrument," the Code would preclude them from claiming conversion of that instrument. Tenn. Code Ann. § 47-3-420(a). An "issuer" is the maker or drawer of an instrument. Tenn. Code Ann. § 47-3-105(c). A drawer of a check is the person(s) who signs or is identified in the draft as the person ordering payment—in this case, the Plaintiffs. Tenn. Code Ann. § 47-3-103(a)(3). The Plaintiffs' manner of payment is not evident from the facts, but because "check[s], money order[s] or similar instrument[s]" all are things that qualify as "instruments," it is not necessary to know the exact manner(s) in which the Holts made payments on the Card account. Tenn. Code Ann. §§ 47-3-104(b)-(c) make clear that a check is an "instrument," and § 47-3-104(f) indicates that a money order of the type specified by the terms and conditions also would be an "instrument."[8] Any instrument that would qualify

---

[7]        Ordinarily, the fact that the Court is considering extrinsic evidence, such as the terms and conditions of the cardholder agreement, would require converting Defendants' motion to dismiss into a motion for summary judgment, pursuant to Fed. R. Civ. P. 12(d). However, as the Defendants point out, the Plaintiffs attached the terms and conditions of the cardholder agreement as an exhibit to the complaint itself, and as a result, the Court does not have to consider "matters outside the pleadings" to decide this issue. Id.; (D.E. No. 22, Amended Motion to Dismiss, p. 11 n.3). *See, e.g.*, Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008) ("[e]xhibits attached to the complaint are properly considered part of the pleading for all purposes, including Rule 12(b)(6)") (internal citations and quotation marks omitted).

[8]        The Sixth Circuit, in a case applying Tennessee law, noted that money orders issued by banks possess the characteristics of negotiability and thus, are "instruments" pursuant to Tenn. Code Ann. § 47-3-104—this is in contrast to postal money orders, which are not negotiable instruments. Harrah's Entertainment, Inc. v. Ace American

as a "similar instrument" to such checks or money orders also would be a negotiable instrument that satisfies the requirements of Tenn. Code Ann. § 47-3-104. Thus, the Plaintiffs, who qualify as "issuers," made their payments by way of "instruments," meaning that they cannot sue for conversion of those items, pursuant to Tenn. Code Ann. § 47-3-420(a).

This conclusion also is supported by case law. The court in Borg v. J.P. Morgan Chase & Co., 2006 WL 2052856 (W.D. Tenn. 2006), confronted this exact issue: whether checks submitted for payment of a credit card account can be the subject of a common-law conversion claim. The court first noted the comments to Tenn. Code Ann. § 47-3-420(a), which explain that "[t]here is no reason why a drawer should have an action in conversion. The check represents an obligation of the drawer rather than property of the drawer." Borg, 2006 WL 2052856, at *7 (quoting Tenn. Code Ann. § 47-3-420 cmt. 1). The court also pointed out that a plaintiff claiming conversion cannot circumvent the above rule by claiming conversion of the *proceeds* of the checks, rather than the checks themselves: " 'the U.C.C. does not draw a distinction between checks and the proceeds received from the checks.' " Borg, 2006 WL 2052856, at *7 (quoting Grand Rapids Auto Sales, Inc. v. MBNA Am. Bank, 227 F. Supp. 2d 721, 730 (W.D. Mich. 2002)). Thus, the Borg court found that despite the fact that the plaintiff's signature had been forged on the checks, "the foregoing authority and the plain language of Tenn. Code Ann. § 47-3-420(a)" barred the plaintiff's claim for conversion. Borg, 2006 WL 2052856, at *8.

Likewise, the Court finds that case law and Tenn. Code Ann. § 47-3-420(a) bar the Holts from bringing a common-law conversion action against the Defendants, given the fact that any payments that they made on the Card account must necessarily have been made via instruments

---

Ins. Co., 100 F. App'x 387, 391-392 (6th Cir. 2004). Because the terms and conditions specify that payment must be made by a check, money order or similar instrument "*drawn on a financial institution*,"any payment that Plaintiffs might have made by money order necessarily would have been a negotiable money order, and not a postal money order. (D.E. No. 1, Exhibit J to Complaint, Section 8D) (emphasis added).

that the Tennessee Code specifically proscribes as subjects of common law conversion. At best,

Plaintiffs' response to this issue fails to offer any authority to rebut Defendants' assertions; at

worst, it is virtually nonresponsive to the Defendants' stated grounds for dismissal. (D.E. No. 27,

Response to Motion to Dismiss, p. 10.) Thus, the Holts' conversion claim fails as a matter of

law.

> D.     Count X: Forgery and/or Theft of Property

With respect to Count X of the Complaint, Defendants do not allege that the Complaint

substantively fails to establish a prima facie case for forgery or theft of property. Rather, they

argue that Plaintiffs' allegations of forgery and/or theft are procedurally defective, given

Tennessee's requirements for pleading statutory violations. (D.E. No. 22, Amended Motion to

Dismiss, pp. 11-12.) Specifically, Defendants cite Pearison v. Campbell, 2002 WL 31662353

(Tenn. Ct. App. 2002), for the proposition that

> [e]very pleading stating a claim or defense relying upon the violation of a
> statute shall, in a separate count or paragraph, either specifically refer to the
> statute or state all of the facts necessary to constitute such breach so that the
> other party can be duly apprized of the statutory violation charge. The
> substance of any ordinance or regulation relied upon for claim or defense
> shall be stated in a separate count or paragraph and the ordinance or
> regulation shall be clearly identified. The manner in which violation of any
> statute, ordinance or regulation is claimed shall be set forth.

Id. at *3 (quoting Rule 8.05 of the Tennessee Rules of Civil Procedure). Once again, just as in

Section C, supra, the Plaintiffs agree completely that the stated language from Pearison is

dispositive of the outcome on this point. (D.E. No. 27, Response to Motion to Dismiss, p. 10.)

Despite the parties' citations to Pearison and their agreement that it controls on this

particular issue, they are both mistaken. The portion from Pearison that Defendants and Plaintiffs

14

quote is taken directly from the *Tennessee* Rules of Civil Procedure. However, "federal courts sitting in diversity apply state substantive law and *federal procedural law*." <u>Gasperini v. Center for Humanities, Inc.</u>, 518 U.S. 415, 427, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996) (citing <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)) (emphasis added). The Tennessee Rules of Civil Procedure are thus inapplicable in this case, and the Federal Rules of Civil Procedure contain no analogue to the Tennessee rule cited by the parties. *See* Fed. R. Civ. P. 8.

The Defendants' motion posits no other objection to the Holts' claims under Count X for forgery and/or theft. As such, because Defendants' sole contention with regard to Count X is inapposite, they have not demonstrated that the claims therein fail as a matter of law.

CONCLUSION

For the reasons set forth herein, the Court **GRANTS** Defendants' motion to dismiss with respect to Counts IV, V, and VIII of the Complaint and **DENIES** Defendants' motion as to Count X.

**IT IS SO ORDERED** this, the 21st day of January, 2010.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE