IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

TIMOTHY AND CYNTHIA HOLT,

     Plaintiffs,

  v.                                  No. 1:08-cv-01285

MACY'S RETAIL HOLDINGS, INC.,
and DEPARTMENT STORES
NATIONAL BANK,

     Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

     Plaintiffs, Cynthia and Timothy Holt, filed suit against Defendants, Macy's Retail

Holdings ("Macy's") and Department Stores National Bank ("DSNB"), in the Circuit Court of

Madison County, Tennessee, which the Defendants (sometimes collectively "Macy's") removed

to this Court on November 19, 2008.  (Docket Entry ("D.E.") No. 1.)  Pending before the Court

is Defendants' motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil

Procedure (D.E. No. 69), to which the Holts have responded. (D.E. No. 80.)  For the reasons set

forth hereinafter, the Court **GRANTS** Defendants' motion.


FACTUAL BACKGROUND

     Cynthia Holt ("Cynthia") purchased several pieces of expensive jewelry from Macy's in

Jackson, Tennessee on October 12, 2007, and again on November 4, 2007. (D.E. No. 71, Second

Amended Complaint, ¶¶ 9, 17-18.)  The exact net amount that she spent on the items is not clear

because the Complaint contains allegations that make it appear as though Cynthia was able to

exchange some of the October 12 merchandise for part of the November 4 jewelry purchases, and that she received and perhaps used Macy's gift cards to defray some of the purchase costs. (Id. at ¶¶ 16-19, 24-26, 32.) However, the combined gross amount that Cynthia spent on jewelry on these two occasions was $112,006.06. (Id. at ¶¶ 9, 18.) Cynthia encountered problems with two of the pieces of jewelry she purchased on October 12. Specifically, she maintains that a silver necklace was irreparably tarnished and a sapphire ring was unable to be sized so that it would fit her finger. (Id. ¶¶ 14-15.) It is undisputed, however, that Cynthia successfully returned both of these items on November 4, 2007. (D.E. No. 69-2, Defendants' Statement of Undisputed Facts, ¶. 20.)

The Plaintiffs made most of these purchases using a Macy's credit card ("the Card")—issued by DSNB—that Plaintiffs claim originally was issued to Cynthia individually, but subsequently was converted into a joint account held by both Cynthia and her husband, Timothy Holt ("Timothy"), without their knowledge. (D.E. No. 71, Second Amended Complaint, at ¶¶ 10-11.) Plaintiffs contend that Cynthia never was required to furnish her signature when she made the aforementioned purchases, but that her "name was signed and/or initialed by another and/or others besides Cynthia herself." (Id. at ¶¶ 18, 20.) Nevertheless, Plaintiffs do not deny that she made the purchases for which her signature allegedly was "forged." Instead, they claim that Cynthia suffers dissociative episodes brought about by post-traumatic stress disorder ("PTSD"), and that her behavior in making these purchases comports with the type of conduct associated with PTSD. (Id. at ¶¶ 6-8.)[1]

---

[1]     However, despite this contention, Plaintiffs stop short of averring that such a dissociative episode actually *did* cause Cynthia to make the purchases, instead merely implying the possibility.

Macy's also held a promotion during the November 4, 2007 LeVian Trunk Show[2] whereby a customer would receive Macy's gift cards (known as "Macy's money") valued at ten dollars ($10) for every fifty dollars ($50) spent on Macy's merchandise. (<u>Id</u>. at ¶ 22.) Because of her purchases that day, Cynthia received 1,952 gift cards, representing a total value of $19,520. (D.E. No. 69-2, Defendants' Statement of Undisputed Facts, ¶ 31.) On November 9, 2007, Cynthia went to the Macy's store in the Wolfchase Mall in Memphis, Tennessee to use her Macy's money, at which time Renee Bolden, an assistant floor manager, allegedly "badgered her with many questions, accusations of theft, and yelling" concerning the large number of gift certificates, such that several Macy's patrons and employees gathered to witness the commotion. (<u>Id</u>. at ¶ 35; D.E. No. 71, Second Amended Complaint, ¶ 24.) However, the altercation notwithstanding, Cynthia was successful in her attempts to use her Macy's money to make purchases at that time. (D.E. No. 69-2, Defendants' Statement of Undisputed Facts, ¶¶ 35-37.)

The gravamen of the primary dispute between the parties is Defendants' refusal to allow Cynthia to return some of the jewelry she purchased on November 4, 2007, which Plaintiffs assert violated the terms under which the Card was issued.  In particular, they maintain that Macy's ignored its previously advertised return policy of 180 days for purchases of more than fifty dollars ($50) made within 100 miles of the cardholder's mailing address. (D.E. No. 71, Second Amended Complaint, at ¶ 13.) However, Defendants claim that there were numerous notifications posted throughout the store and printed on receipts advising customers that jewelry purchases were subject to a special exception to the usual return policy and were returnable only within thirty (30) days of purchase. (D.E. No. 69-1, Motion for SJ, p. 6.) Plaintiffs aver that Cynthia was never so notified. (D.E. No. 71, Second Amended Complaint, ¶ 30.)  Because the

---

[2]        In their memorandum of law, Defendants explain that a trunk show "is where one jewelry manufacturer, such as Singer or LeVian, would come to the store and bring in jewelry, not normally carried by the store, and place it for sale on that date." (D.E. No. 69-1, Motion for SJ, p. 2.)

Holts have been unable to return some of the merchandise and have stopped making payments to Defendants on the debt,[3] their credit rating[4] has been negatively affected. (Id. at ¶¶ 33-38.)

As a result of the above actions, Plaintiffs are seeking damages against Defendants for: breach of contrary and/or warranty; fraud and/or misrepresentation; violations of the Tennessee Consumer Protection Act ("TCPA"); detrimental reliance (also known as "promissory estoppel"); money had and received; trespass to chattels, forgery and/or theft of property; unjust enrichment; outrageous conduct and/or intentional infliction of emotional distress; other intentional, reckless, and/or negligent actions or omissions; and negligent hiring.[5] (Id. at ¶¶ 40-100.)

## STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that

> judgment . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio

---

[3]     The balance on their Macy's card was $92,895.64 as of June 30, 2007. After payments and credits, the debt owing as of August 30, 2007 was $84,708.56. After similar payments in September, the balance was $76,958.56. The amount due was $79,639.98 in October of 2007, and $101,997.66 in November. (D.E. No. 69-2, Defendants' Statement of Undisputed Facts, ¶¶ 8-12.)

[4]     The Complaint contains specific allegations that Timothy Holt's individual credit rating has been affected, but does not make similar claims about his wife's individual credit rating. (D.E. No. 71, Amended Complaint, ¶¶ 35-36.) Plaintiffs also maintain that their joint credit rating has suffered. (Id.)

[5]     In their original complaint, Plaintiffs also included claims for conversion and for violations of the Fair Credit Reporting Act and Fair Debt Collection Practices Act. However, in its Order dated January 21, 2010, the Court dismissed those portions of the complaint. (D.E. No. 49.)

Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). When the motion is supported by documentary proof, such as depositions and affidavits, the nonmoving party may not rest on the pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324; see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir.1998). It is insufficient for the nonmoving party "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In the Sixth Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [an] asserted cause[] of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

ANALYSIS

A.  Breach of Contract / Warranty

"To maintain an action for breach of contract, a plaintiff must establish (1) the existence of an enforceable contract, (2) non-performance of the contract amounting to a breach of that contract, and (3) damages flowing from the defendant's nonperformance." Byrd & Associates,

PLC v. Siliski, 2007 WL 3132929, at *6 (Tenn. Ct. App. 2007) (citing Ingram v. Cendant Mobility Fin. Corp., 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006). Plaintiffs aver that Defendants committed a breach of contract because of the following acts and omissions: (1) selling two pieces of jewelry to Plaintiffs that could not be properly cleaned or sized to fit on Cynthia's finger;[6] (2) failing to honor the Macy's money gift certificates that Cynthia obtained on November 4, 2007; (3) increasing the credit limit on the Macy's card without Plaintiffs' approval; and (4) failing to accept Plaintiffs' attempted returns of some of the November 4, 2007 purchases, in violation of Defendants' duties under the cardholder agreement. (D.E. No. 71, Second Amended Complaint, ¶¶ 40-44.)

It is undisputed that Cynthia received a full refund from Macy's for the price of the allegedly defective jewelry and thus, suffered no loss. *See supra* footnote 6. Therefore, for the same reasons that her breach of warranty claim fails, so does her breach of contract claim regarding the defective jewelry. Id. Similarly, Plaintiffs do not deny that Cynthia was able to use her Macy's money gift certificates, despite the allegation in the complaint to the contrary.[7] Therefore, accepting without deciding that the Macy's money created an enforceable agreement,

---

[6]    Although Count I of the complaint is styled "Breach of Contract and/or Warranty," Plaintiffs make no attempt to differentiate between the allegations forming the basis of a breach-of-warranty claim and those for breach of contract. The only contention that the Court can construe as a possible basis for breach of warranty is that two of the jewelry items were defective. (D.E. No. 71, Second Amended Complaint, ¶ 43A-B.) However, Plaintiffs admit that Cynthia returned both of these pieces of jewelry for a refund, so it is undisputed that even if there was a valid warranty that Defendants breached, Plaintiffs were not damaged. (D.E. No. 80-1, Plaintiffs' Response to Defendants' Statement of Undisputed Facts, ¶ 20.) Moreover, the Court notes that the Holts' response to the motion for summary judgment essentially does not address breach of warranty, but focuses on refuting Defendants' arguments with respect to breach of *contract*. As they have offered no arguments or proof to substantiate a breach-of-warranty claim, the Court will consider it to have been abandoned by the Plaintiffs.

[7]    Paragraphs 34 and 35 of the Defendants' statement of undisputed facts aver that Cynthia used the Macy's money to make thousands of dollars worth of purchases, and that she gifted some of the others to charitable organizations. (D.E. No. 69-2, ¶¶ 34-35.) In their response to paragraph 34, Plaintiffs say the allegations therein "are disputed in that Cynthia was incentivized to purchase thousands of dollars of merchandise." (D.E. No. 80-1, Plaintiffs' Response to Defendants' Statement of Undisputed Facts, ¶¶ 34.) The Court does not construe that sentence as a denial of the Defendants' statement; it simply reinforces that Cynthia successfully used the Macy's money to make other purchases. Surprisingly, Plaintiffs do *not* dispute paragraph 35 of the Defendants' statement of undisputed facts, which contains assertions similar to those in paragraph 34. Therefore, the Court concludes that Plaintiffs admit the truth of Defendants' statements regarding Cynthia's redemption of the Macy's money gift certificates.

there was no non-performance of that contract on the part of the Defendants. As such, this allegation does not form the basis of a breach-of-contract claim.

Furthermore, the Court finds unavailing Plaintiffs' argument that Defendants committed a breach of contract by unilaterally increasing the credit limit on the Macy's card. First, other than conclusory assertions, Plaintiffs have offered no proof whatsoever[8] that their credit line was actually increased, with or without their knowledge or permission. "Conclusory assertions, supported only by [Plaintiffs'] own opinions, cannot withstand a motion for summary judgment." Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008) (citations omitted). More importantly, however, even assuming that Defendants did what Plaintiffs allege, the terms and conditions explicitly permitted them to do so: "We can increase or decrease your credit limit at any time without giving you notice in advance unless required by law." (D.E. No. 70-2, Credit Card Documents, ¶ 11.) Thus, Defendants cannot be said to have breached their duties under the contract. Therefore, the Court finds that Plaintiffs can prove no set of facts that will establish a breach-of-contract claim with respect to the alleged credit-limit increase.

Accordingly, the only contention that potentially could form the basis of a contract claim is that Defendants' failure to accept returns of several pieces of jewelry was a violation of the cardholder agreement. Assuming that the credit card agreement created a valid contract between the parties,[9] the terms and conditions section nevertheless is silent regarding the store's return

---

[8]     To support their claim that Defendants unilaterally increased the credit limit on the card, Plaintiffs cite several lines from the deposition of Holly Steele—a sales associate for Finlay Fine Jewelry, working inside Macy's, who sold Cynthia some of the merchandise at issue—that do not speak to the issue at all. (D.E. No. 69-11, Steele Deposition, pp. 42-43.) Moreover, Cynthia's own deposition testimony about the increase in their credit limit is equivocal at best, since she does not remember exactly when the credit line was increased, who increased it, how much it was increased, or indeed, if it was actually increased at all.  (D.E. No. 69-3, Holt Deposition, pp. 123-25.)

[9]     In their response, Plaintiffs state that "[t]he existence of an enforceable Macy's credit card agreement in writing with both Timothy's and the Defendants' signatures as well as the validity thereof is being disputed." (D.E. No. 80-2, Response to Motion for SJ, p. 2.) This remark is found in the section in which the Holts contend that Defendants have committed a breach of contract. They do not explain how the contract is "being disputed," or in what ways it would be unenforceable. The Plaintiffs appear to be claiming that there was a valid contract of which

policy. Plaintiffs aver that "Macy's advertised a one hundred eighty day 'hassle free' return policy for purchases made over $50.00 within one hundred miles of the purchaser's mailing address . . .." (D.E. No. 80-2, Response to Motion for SJ, p. 2.) Defendants concede that a "credit card brochure" contained this information. (D.E. No. 69-1, Motion for SJ, p. 10.) Nevertheless, they maintain that the brochure did not create a contractual obligation. (Id.) The Court agrees. Immediately above the signature line in the credit card application reads the following:

> You agree to have received and to be bound by the above Notices, the FDS Bank Important Credit Terms and Conditions, the FDS Bank Privacy Policy, and the additional terms you will receive with your Goldsmith-Macy's Credit Card(s), all of which are incorporated by reference and made a part of this Application. You affirm that you are eighteen (18) years of age or older.

(D.E. No. 70-2, Credit Card Documents, p. 13.) None of the documents mentioned in that paragraph contain any reference to the store's return policy.[10] As a result, the Court concludes that this return policy—accepting all of Plaintiffs' representations about it as true—was not part of the contractual obligation into which Defendants entered with Plaintiffs.

Even if the return policy itself created a discrete contractual obligation for the Defendants, they have asserted that they also placed several notices in various locations that read:

> Fine Jewelry and Fine Watch Return Policy: Merchandise must be returned or exchanged within 30 days from original date of purchase with the original receipt. The security tag / price ticket must be attached to jewelry merchandise. Watches must be

---

they can avail themselves in their suit, but that the contract was invalidly executed or was the product of a forgery, such that they can seek quasi-contractual remedies. Because these two propositions are mutually exclusive, and because the Plaintiffs have made a claim for breach of contract, the Court will presume that Plaintiffs, in this statement, are averring the existence of a valid contract.

[10]     Because it is written as "the *above* Notices," the Court interprets that to mean "Notices contained in the body of the credit card agreement." The "above Notices" to which the agreement refers do not mention the return policy or anything connected with credit card purchases. The only items the Court can construe as "Notices" concern items like creditworthiness, consumer credit reports, and privacy-related authorizations. Moreover, the "additional terms" that Plaintiffs received merely supply a more detailed recitation of the terms and conditions associated with the card. *See* (D.E. No. 70-2, Credit Card Documents, pp. 3-18.)

accompanied by the warranty & original box. *This is an exception to Macy's Regular Return Policy.*

(D.E. No. 69-1, Motion for SJ, p. 6) (emphasis added). Defendants argue that this language was printed on the back of all register receipts, was posted on signs next to all cash registers and on the sales counter, and was placed on the terminal where customers signed for their purchases. (Id at pp. 5-6.) Plaintiffs dispute all of these contentions,[11] but they do not explain why, nor do they offer any evidence that would indicate a legitimate factual dispute.[12] (D.E. No. 80-1, Plaintiff's Response to Defendants' Statement of Undisputed Facts, ¶¶ 22-23.) By contrast, Defendants have proffered deposition testimony from both Adam Fox (another sales associate for Finlay Fine Jewelry, working inside Macy's, who sold Cynthia some of the merchandise at issue) and Holly Steele, affirming that the language was printed on Cynthia's receipt and posted in various locations throughout the store (D.E. No. 69-2, Defendants' Statement of Undisputed Facts, ¶¶ 22-23), and they have even provided the Court with a copy of one such sign. (D.E. No. 69-1, Motion for SJ, p. 6.) The Plaintiffs have not disputed these assertions. Therefore, even assuming that the store's return policy created a valid contractual or quasi-contractual obligation binding the Defendants, the Court finds that the language outlining the "Fine Jewelry" exception was posted conspicuously and in varied locations, such that Cynthia was, at the very least, on constructive notice of it. *See* <u>Kirby v. Macon County,</u> 892 S.W.2d 403, 409 (Tenn. 1994)

---

[11]     It is unclear whether Plaintiffs are disputing that Macy's *posted* the notices of the return policy for "Fine Jewelry," or whether they simply deny Cynthia ever saw them. Regardless the bare denial of the moving party's assertions is not sufficient to create "specific facts showing that there is a genuine issue for trial," <u>Celotex</u>, 477 U.S. at 324, and the Holts have not provided any factual basis to support their denials under either interpretation.

[12]     In response to Defendants' statement that this language "was posted on a sign situated next to the cash register," Plaintiffs respond only with the following: "The allegations in Defendants' Statement No. 23 are disputed." (D.E. Nos. 69-2, Defendants' Statement of Undisputed Facts, ¶ 23; 80-1, Plaintiffs' Response to Defendants' Statement of Undisputed Facts, ¶ 23.) Without more specificity or evidence to the contrary, the Court cannot construe this statement as a legitimate refutation of the Defendants' assertions. At the summary judgment stage, the nonmoving party must present some "specific facts showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324. A mere denial of the Defendants' asserted facts, without more, does not create a genuine issue of material fact. <u>Matsushita</u>, 475 U.S. at 586.

(defining constructive notice as "information or knowledge of a fact imputed by law to a person (although [s]he may not actually have it), because [s]he could have discovered the fact by proper diligence and [her] situation was such as to cast upon [her] the duty of inquiring into it") (internal citations and quotation marks omitted). Therefore, Plaintiffs' claim for breach of contract is without merit.

B.   Fraud and/or Misrepresentation

To establish a claim for fraud, a plaintiff must establish "(1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) [that the misrepresentation] involve[d] a past or existing fact." Kincaid v. SouthTrust Bank, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006) (citing Dobbs v. Guenther, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992)). Plaintiffs' claim for fraud is based upon essentially the same allegations as their claim for breach of contract—namely, that two jewelry pieces were defective; Cynthia was unable to use the Macy's money gift certificates; the Defendants unilaterally increased the credit limit on the card; and Defendants did not allow Plaintiffs to return some of the jewelry.[13] (D.E. No. 71, Second Amended Complaint, ¶¶ 45-59.)

Plaintiffs' claims with respect to the defective jewelry, the Macy's money gift certificates, and the alleged increase in the credit limit are without merit for the reasons articulated *supra* in Section A: Plaintiffs returned the defective jewelry; they were able to use the Macy's money; and even if the Holts could establish that the Defendants unilaterally raised the card's credit limit, the terms and conditions explicitly permitted them to do so.

---

[13]       The Holts also aver that Defendants committed fraud by failing to inform them that a third party was operating the jewelry department. (D.E. No. 71, Second Amended Complaint, ¶ 46.) However, the Plaintiffs have not pointed to how they suffered any loss as a result of this omission, even accepting it as true. Thus, it cannot serve as the foundation for a claim of fraud.

Likewise, the Holts' contention that Defendants committed fraud by failing to allow Plaintiffs to return some of the jewelry fails as well. Plaintiffs aver that because Macy's advertised easy returns on purchases over $50, they committed an intentional misrepresentation that they knew was false when they refused to allow Plaintiffs return the items. (D.E. No. 80-2, Response to Motion for SJ, p. 4.) Defendants counter that the jewelry at issue was not subject to the regular return policy, citing the numerous notices that a more restrictive return policy was in effect. (D.E. No. 69-1, Motion for SJ, p. 12); *see supra* Section A. However, even assuming that the 180-day allowance applied to these jewelry items, Defendants nevertheless contend that the "misrepresentation" at issue—that the items could be returned any time within 180 days of purchase—was a promise of *future* action and not a representation involving a past or existing fact. (D.E. No. 69-1, Motion for SJ, p. 12); Kincaid, 221 S.W.3d at 40 (internal citation omitted). Finally, Defendants maintain that any misrepresentation on their part cannot have been intentional, given the fact that Defendants at least attempted to notify customers that the return policy differed with respect to fine jewelry purchases—even if Cynthia contends those efforts were unsuccessful. (D.E. No. 69-1, Motion for SJ, p. 12.)

The Court finds Defendants' arguments to be persuasive. Even accepting as true the Holts' assertion that Cynthia never saw the signs containing an exception to the standard return policy, they have presented no proof that Defendants did not at least *attempt* to notify customers of the exception. For that matter, there is nothing in the record to suggest that Defendants made any representations to the Holts with an intent to deceive them. Plaintiffs have not attempted to rebut these arguments, instead persisting in their claim that the Defendants misrepresented material facts. Once again, this is nothing more than a conclusory allegation, which cannot defeat a motion for summary judgment. Arendale, 519 F.3d at 605. Accordingly, Defendants are

entitled to summary judgment on Plaintiffs' claims for fraud.

    C.  <u>Tennessee Consumer Protection Act ("TCPA")</u>

The TCPA prohibits "[u]nfair or deceptive acts or practices," and provides a private right of action to recover actual damages to "[a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part . . .." Tenn. Code Ann. §§ 47-18-104(a), 109(a)(1). Tennessee courts have interpreted the TCPA as imposing two distinct proof obligations on a plaintiff seeking to establish a cause of action: "(1) that the defendant engaged in *an unfair or deceptive act or practice declared unlawful by the TCPA* and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated. . ..' " <u>Tucker v. Sierra Builders</u>, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (quoting Tenn. Code Ann. § 47-18-109(a)(1)) (emphasis added). A plaintiff need not prove that the defendant's conduct was willful, but if it was, the TCPA allows the trial judge to award treble damages. <u>Tucker</u>, 180 S.W.3d at 115-16 (internal citations omitted).The TCPA is much broader in scope than common-law fraud because it "applies to any act or practice that is unfair or deceptive to consumers." <u>Id</u>. at 115.

Plaintiffs list no fewer than eighteen (18) ways in which they believe Defendants have violated the TCPA.[14] (D.E. No. 71, Second Amended Complaint, ¶¶ 60-63.) Conspicuously absent, however, is any attempt to connect these allegations to any of the specific practices that

---

[14]    The Court notes that the sheer multiplicity of the Plaintiffs' contentions—combined with the lack of any factual or legal support—borders upon folly. Indeed, by attempting to paint in such broad strokes, the Plaintiffs have dramatically lessened the possibility that any of their TCPA claims could be found credible, simply because they use the same conclusory allegations that they aver form the basis of other rejected causes of action. With such scattershot and repetitive pleadings, it is unnecessary for the Court to analyze and discount each of the eighteen allegations seriatim, particularly because the failures articulated herein apply equally to all of Plaintiffs' assertions.

the TCPA has declared unlawful. <u>Tucker</u>, 180 S.W.3d at 115; Tenn. Code Ann. § 47-18-104(b).
Instead, the Holts have made the conclusory assertion that all of their allegations detail "unfair
and/or deceptive acts/practices in violation of the [TCPA]," without any explanation of why this
is so. (D.E. No. 71, Second Amended Complaint, ¶ 62.) Furthermore, their response to
Defendants' motion for summary judgment fares no better because it merely reiterates the same
eighteen statements listed in the complaint, with the accompanying unsupported insistence that
all of them are violations of the TCPA. (D.E. No. 80-2, Response to Motion for SJ, pp. 5-6.)
They have provided no references to the record to bolster their TCPA claim. As noted above,
such conclusory allegations cannot withstand a motion for summary judgment, and accordingly,
Plaintiffs' TCPA claim is without merit and fails as a matter of law.[15] <u>Arendale</u>, 519 F.3d at 605.

    D.  <u>Promissory Estoppel</u>

    Promissory estoppel is based upon "[a] promise which the promisor should reasonably
expect to induce action or forbearance of a definite and substantial character on the part of the
promisee and which does induce such action or forbearance . . .." <u>Chavez v. Broadway Elec.
Service Corp.</u>, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007) (citations omitted). To succeed under
a promissory estoppel theory, a plaintiff must show "(1) that a promise was made; (2) that the
promise was unambiguous and not unenforceably vague; and (3) that [she] reasonably relied on
the promise to [her] detriment." <u>Id</u>. at 404 (citations omitted).

    Tennessee courts generally disfavor claims based upon promissory estoppel: "Tennessee
does not liberally apply the doctrine of promissory estoppel. To the contrary, it limits application
of the doctrine to exceptional cases." <u>Id</u>. at 406 (quoting <u>Barnes & Robinson Co. v. OneSource</u>

---

[15]    Defendants also request attorneys' fees pursuant to Section 47-18-109(e)(2) of the TCPA (which they
mistakenly cite as Tenn. Code Ann. § 47-18-109(d)(2)). (D.E. No. 69-1, Motion for SJ, p. 13.) That section allows a
court to award attorneys' fees if it finds that a private action under the TCPA "is frivolous, without legal or factual
merit, or brought for the purpose of harassment. . .." Tenn. Code Ann. § 47-18-109(e)(2). If Defendants insist upon
attorneys' fees under this provision, they should do so in a separate motion.

Facility Services, Inc., 195 S.W.3d 637, 645 (Tenn. Ct. App. 2006); *see also* Johnson v. Allison, 2004 WL 2266796, at *8 (Tenn. Ct. App. 2004) (holding that because promissory estoppel operates as "an exception to the Statute of Frauds, it should not be applied too liberally lest the exception swallow the rule"); and Shedd v. Gaylord Entertainment Co., 118 S.W.3d 695, 700 (Tenn. Ct. App. 2003) (citations and quotation marks omitted) (asserting that promissory estoppel is only appropriate in "exceptional cases where to enforce the Statute of Frauds would make it an instrument of hardship and oppression, verging on actual fraud"). Promissory estoppel is "an equitable remedy based on a quasi contractual theory," only available "[i]n cases in which there is an absence of consideration between the parties so that there is no valid contract . . .." Diana Asbury v. Lagonia Sherman, LLC, 2002 WL 31306691, at *5 (Tenn. Ct. App. 2002) (citing Rampy v. ICI Acrylics, 898 S.W.2d 196, 211 (Tenn. Ct. App. 1994) and Alden v. Presley, 637 S.W.2d 862, 864 (Tenn. 1982)) (internal quotation marks omitted).

Although such information is nowhere to be found in any of the Holts' pleadings, the Court assumes they intend to assert quasi-contractual remedies as an alternative to their claim for breach of contract; otherwise, having insisted quite exhaustively that Defendants are guilty of breaching a valid contract, the Plaintiffs would be unable to invoke promissory estoppel. However, even if Plaintiffs were able to argue successfully that the credit card agreement was somehow invalid, their promissory estoppel claim nevertheless fails. First, Plaintiffs have made no showing that theirs is the sort of "exceptional" situation that Tennessee courts require in order to grant relief on this theory. Chavez, 245 S.W.3d at 406. Moreover, even if the Holts could establish that they relied upon an unambiguous promise the Defendants made to them, they have not proffered any evidence of damage. As noted *infra* Section E, the Plaintiffs still retain possession of both the jewelry they purchased and the funds owing to Macy's as a result of those

14

purchases. Thus, because they cannot demonstrate how they have been damaged by relying on the Defendants' alleged promises, the Holts cannot establish an element of their claim for promissory estoppel, which therefore must fail.

     E.  <u>Trespass to Chattels</u>

     Tennessee case law on the tort of trespass to chattels is virtually nonexistent. However, Section 217 of the Restatement 2nd of Torts says that a trespass to chattel "may be committed by intentionally dispossessing another of the chattel, or using or intermeddling with a chattel in the possession of another." A person who commits a trespass to chattel may be liable to the possessor of (or to someone who may become entitled to possess) the chattel if: (a) the chattel is impaired as to its condition, quality, or value, or (b) the possessor is deprived of the use of the chattel for a substantial time, or (c) the trespass causes bodily harm to the possessor or to some person or thing in which he has a legally protected interest. <u>Restatement (Second) of Torts, §§ 218-220</u> (1965). "Though not amounting to conversion, the defendant's interference must, to be actionable, have caused some injury to the chattel or to the plaintiff's rights in it." <u>Jamgotchian v. Slender</u>, 89 Cal. Rptr. 3d 122, 134 (Cal. Ct. App. 2009). Said differently, "one who intentionally interferes with another's chattel is liable only if there [sic] results in harm to 'the [owner's] materially valuable interest in the physical condition, quality, or value of the chattel, or if the [owner] is deprived of the use of the chattel for a substantial time.' " <u>School of Visual Arts v. Kuprewicz</u>, 771 N.Y.S.2d 804, 807-08 (N.Y. Sup. Ct. 2003) (quoting <u>Restatement (Second) of Torts, § 218 cmt. e</u> (1965)).

     The basis of this claim is that Defendants have failed to allow Plaintiffs to return certain of their jewelry purchases. Because they are retaining funds to which the Holts have a "right of possession," Defendants are committing a trespass to chattels. (D.E. No. 71, Second Amended

Complaint, ¶¶ 82-84.) In their motion for summary judgment, the Defendants aver the following:

> [I]t is difficult to see the plaintiff's [sic] argument as to the how the facts in this case constitute a trespass to chattels. [Cynthia] has failed to pay for the jewelry which she possesses. The right to possession of the funds she maintains constitutes a trespass to chattel has not changed from her possession. Instead, it is [Cynthia's] argument that the jewelry she has purchased should be returned. No one has interfered with her possession of her money or the jewelry. [She] still has both.

(D.E. No. 69-1, Motion for SJ, p. 16.) Plaintiffs' only response to these arguments is reiterating their claims from the complaint—they do not cite any supporting law, nor do they refer to any part of the factual record of this case.[16] (D.E. No. 80-2, Response to Motion for SJ, p. 8.) They, in effect, do not contest any of Defendants' arguments. Accordingly, because the Court agrees with Defendants that the Holts have not substantiated their claim of trespass to chattels, and because the Plaintiffs have not attempted to counter the Defendants' position, this cause of action is without merit.

F.   Forgery and/or Theft of Property

Plaintiffs aver, citing Sections 39-14-114 and 39-14-103 of the Tennessee Code, that Defendants have committed forgery and theft. (D.E. No. 71, Second Amended Complaint, ¶¶ 85-88.) Both of these statutes involve offenses under Tennessee *criminal* law, and Plaintiffs have not attempted to argue that there is any private right of action for Defendants' alleged violation.[17]

---

[16]   Indeed, Plaintiffs' response is virtually nonsensical on this point, insofar as they contend that Defendants forced them to trade in "unwanted" jewelry, and that, combined with Macy's nondisclosure of the involvement of a third-party vendor, constitutes intentional interference with Plaintiffs' rights to their funds. (D.E. No. 80-2, Response to Motion to Dismiss, p. 8.) It is difficult to conceive how Defendants' alleged nondisclosure of a third-party caused a trespass to chattels, not to mention how Plaintiffs were damaged by trading in jewelry that they admittedly did not want. (Id.)

[17]   *See* Buckner v. Carlton, 623 S.W.2d 102 (Tenn. Ct. App. 1981), *superseded by statute on other grounds*, Tenn. Code Ann. § 9-8-307, *as recognized in* Lucas v. State, 141 S.W.3d 121, 137 (Tenn. Ct. App. 2004). The court in Buckner articulated a tripartite test for determining when a private right of action exists for a criminal statute: (1) is the plaintiff among those for whose special benefit the statute was enacted? (2) is there any indication of legislative intent to create a private right of action? (3) is a private right of action consistent with the underlying purposes of the legislation? Id. at 105 (citing Cort v. Ash, 422 U.S. 66, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1976)). The Plaintiffs have not argued that either of these Tennessee criminal statutes satisfies any of the three elements of the

As a result, these causes of action must be dismissed.

      G.  <u>Unjust Enrichment / Money Had and Received</u>

      "[U]njust enrichment and money had and received are essentially the same cause of action, [both being] quasi-contractual actions." <u>Bennett v. Visa U.S.A., Inc.</u>, 198 S.W.3d 747, 755 (Tenn. Ct. App. 2006). The Tennessee Supreme Court has explained unjust enrichment as follows:

> Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist. <u>Paschall's, Inc. v. Dozier</u>, 407 S.W. 2d 150, 154-55 (Tenn. 1966). Courts will impose a contractual obligation under an unjust enrichment theory when: (1) *there is no contract between the parties* or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation. <u>Id</u>. at 154-55.

<u>Whitehaven Comm'y Baptist Church v. Holloway</u>, 973 S.W.2d 592, 596 (Tenn. 1998) (emphasis added).

      As discussed *supra* Section D, because a quasi-contractual remedy such as unjust enrichment requires the absence of a valid contract, the Court will assume that Plaintiffs intended to plead this cause of action as an alternative to their claim for breach of contract. However, even if the Holts were able to establish that the credit card agreement was invalid, they cannot make out a claim for unjust enrichment. As the Court has pointed out *supra* in Sections D and E, it strains credulity to believe that the Defendants have been unjustly enriched, given that the Plaintiffs retain possession of both the jewelry that is the subject of this lawsuit and the funds to pay for their purchases. It is actually the Defendants who have been deprived of money and/or property. Thus, because Defendants have not been "enriched" at all by these transactions, the Holts cannot make out a colorable claim for unjust enrichment. The Defendants are entitled to

---

<u>Buckner</u> test. Moreover, the Court has found no Tennessee case law in which either statute has been construed to create a private right of action.

summary judgment on this cause of action.

      H.  <u>Intentional Infliction of Emotional Distress / Outrageous Conduct</u>

      "[O]utrageous conduct . . . is the equivalent to a claim for intentional infliction of emotional distress." <u>Crowe v. Bradley Equip. Rentals & Sales, Inc.</u>, 2010 WL 1241550, at *4 (Tenn. Ct. App. 2010) (citing <u>Bain v. Wells</u>, 936 S.W.2d 618, 622 n.3 (Tenn. 1997)). To establish a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must prove the following: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." <u>Bain</u>, 936 S.W.2d at 622 (citations omitted). Tennessee courts have held that a plaintiff's burden in establishing these elements is difficult: "Outrageous conduct does not include 'mere insults, indignities, threats, annoyances, petty oppression or other trivialities.' " <u>Lane v. Becker</u>, 2010 WL 669243, at *5 (Tenn. Ct. App. 2010) (quoting <u>Levy v. Franks</u>, 159 S.W.3d 66, 83 (Tenn. Ct. App. 2004); <u>Arnett v. Domino's Pizza I, LLC</u>, 124 S.W.3d 529, 539 (Tenn. Ct. App. 2003) (quoting <u>Bain</u>, 936 S.W.2d at 622)). "A plaintiff seeking damages for intentional infliction of emotional distress must meet an 'exacting standard.' " <u>Lane</u>, 2010 WL 669243, at *5 (quoting <u>Miller v. Willbanks</u>, 8 S.W.3d 607, 614 (Tenn. 1999)). " 'Recovery for intentional infliction of emotional distress is limited to mental injury which is so severe that no reasonable person would be expected to endure it.' " <u>Lane</u>, 2010 WL 669243, at *5 (quoting <u>Arnett</u>, 124 S.W.3d at 540). Because it is the trial court's province to determine whether a defendant's conduct is outrageous, it may dismiss this legal theory as a matter of law. <u>Lane</u>, 2010 WL 669243, at *6 (citing <u>Restatement (Second) of Torts, § 46 cmt. h</u> (1965)).

      The foundation of Plaintiffs' claim for IIED is the alleged altercation that occurred when Cynthia attempted to redeem her Macy's money gift certificates at the Defendant's store in the

Wolfchase Mall. (D.E. No. 71, Second Amended Complaint, ¶ 93.) Also, Plaintiffs aver that
Defendants caused IIED by refusing to accept their attempted returns, wrongfully increasing
their credit limit, and reporting their debt to credit agencies. (Id.) This conduct on the part of
Defendants, even accepting Plaintiffs' allegations as true, does not approach the level of
"outrageousness" that Tennessee courts require to maintain a cause of action for IIED.
Furthermore, Plaintiffs do not even attempt to contextualize the Defendants' words and actions
as the sort of conduct that a civilized society does not tolerate. Bain, 936 S.W.2d at 622. Even if
the conduct were sufficiently outrageous, however, the Holts do not contend that either of them
has suffered or is suffering from serious mental injury; they allege only that the conduct caused
them emotional distress. Id. This is insufficient as a matter of law to state a claim for IIED. Levy,
159 S.W.3d at 83 ("mere insults, indignities, threats, annoyances, petty oppression [and] other
trivialities" are insufficient bases for IIED claims); Arnett, 124 S.W.3d at 540 ("Recovery for
intentional infliction of emotional distress is limited to mental injury which is so severe that no
reasonable person would be expected to endure it"). Therefore, Defendants are entitled to
judgment as a matter of law on this claim.

     I.   <u>Negligent Hiring</u>

     Plaintiffs also assert that Macy's has committed the tort of negligent hiring of Renee
Bolden, the assistant store manager at the Macy's store in Memphis. (D.E. No. 71, Second
Amended Complaint, ¶¶ 98-100.) "Tennessee courts recognize the negligence of an employer in
the selection and retention of employees and independent contractors." <u>Doe v. Catholic Bishop
for Diocese of Memphis</u>, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008) (citations omitted). "A
plaintiff in Tennessee may recover for negligent hiring . . . of an employee if he establishes, in
addition to the elements of a negligence claim, that the employer had knowledge of the

employee's unfitness for the job." Id. at 717 (citation omitted). "A negligence cause of action has five essential elements: (1) a legally recognized duty owed by the defendant to the plaintiff, (2) the defendant's breach of that duty, (3) an injury or loss, (4) causation in fact, and (5) legal cause." Timmons v. Metro. Gov't of Nashville and Davidson County, 307 S.W.2d 735, 741 (Tenn. Ct. App. 2009) (citations omitted).

In this case, Plaintiffs have made no effort whatsoever to establish that Macy's was negligent, let alone that it was negligent in hiring Bolden. The extent of Plaintiffs' argument is that Macy's knew or should have known that Bolden would "pose an unreasonable risk to clientele, like Cynthia" based on her "repetitive unprofessional outbursts." (D.E. No. 71, Second Amended Complaint, ¶ 99.) However, they do not present any proof that Macy's knew or should have known about Bolden's alleged unprofessionalism.[18] As Defendants assert, even if the Holts had proved that Macy's breached a duty that it owed to them, they cannot establish that they have been injured by such a breach: Cynthia was able to redeem the Macy's money gift certificates, and as noted *supra* Section H, Plaintiffs have not substantiated their claim for IIED. Therefore, because Plaintiffs have neither attempted to establish the elements of this claim, nor rebutted the Defendants' contentions about why it fails, Defendants are entitled to summary judgment on this cause of action.

Finally, in their complaint, Plaintiffs maintain that Defendants have committed "other intentional, reckless, and/or negligent actions and or omissions." (D.E. No. 71, Second Amended Complaint, ¶¶ 95-97.) This language does not sufficiently plead a cause of action under Tennessee law for which the Plaintiffs can receive relief. *See, e.g.*, Kent v. Edwards & Assocs.,

---

[18] Their response to this portion of Defendants' summary judgment motion merely reiterates the allegations in the complaint, and adds that Ms. Bolden "was fired from Macy's due to a lack of integrity involving the theft of inventory belonging to her employer." (D.E. No. 80-2, Response to Motion for SJ, p. 10.) They make no attempt, however, to establish that Bolden's alleged termination had any relationship to facts Macy's knew or should have known at the time it hired her.

Inc., 2000 WL 124614, at *6 (Tenn. Ct. App. January 25, 2000) (quoting Gann v. Key, 758

S.W.2d 538, 544 (Tenn. Ct. App. 1988)) (" 'It is not enough . . . to allege a legal conclusion; the

actionable conduct should be set out in the declaration' "); *see also* id. (quoting Brasswell v.

Carothers, 863 S.W.2d 722, 729 (Tenn. Ct. App. 1993)) (" 'inferences based upon inferences' "

are insufficient to establish a cause of action). Moreover, Plaintiffs do not respond to

Defendants' arguments that this claim should be dismissed, so the Court construes the Holts'

silence as a waiver of this allegation. (D.E. No. 69, Motion for SJ, p. 6.)

CONCLUSION

For the reasons articulated herein, the Court **GRANTS** the Defendants' motion for

summary judgment.

**IT IS SO ORDERED** this, the 7th day of June, 2010.


s/ J. DANIEL BREEN_____
UNITED STATES DISTRICT JUDGE